UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION



| | |
|---|---|
| ALICE BUCKHANAN | PLAINTIFF |
| V. | CIVIL ACTION NO. 3:13CV278 TSL-JMR |
| ERIC K. SHINSEKI, IN HIS OFFICIAL CAPACITY AS SECRETARY OF THE UNITED STATES DEPARMENT OF VETERANS AFFAIRS; VETERANS ADMINISTRATION MEDICAL CENTER, JACKSON G.V. "SONNY" MONTGOMERY MEDICAL CENTER; JOE BATTLE; CHARLES DONELSON and DOES 1 through 10 | DEFENDANTS |

### COMPLAINT
### (Jury Trial Demanded)

COMES NOW, the Plaintiff, Alice Buckhanan, by and through Counsel, and files this her Complaint for money damages and demand for jury trial, against the Defendants, Eric Shinseki, Secretary Department of Veterans Affairs (hereafter "V.A."); Joe Battle; Charles Donelson; and Does 1-10, and alleges as follows:

### PARTIES

1. Plaintiff, Alice Buckhanan, is an adult citizen, currently residing in Hinds County, Mississippi.

2. Defendant, Eric Shenseki, Secretary of Veterans Affairs, is doing business in Mississippi, and may be served with process upon the agents for service of process, pursuant to F.R.C.P. Rule 4(I), through Hon. Eric H. Holder, Jr. United States Attorney General, United States Department of Justice 950 Pennsylvania Ave., NM, Washington DC 20530-0001, and by service upon Greg Davis, United States Attorney for the Southern District of Mississippi, U.S. Attorney's Office, 501 East Court Street, Suite 4.430, Jackson, Mississippi 39201.

3. Defendant Joe Battle, individually, and in his official capacity as Director of the

1

G.V. (Sonny) Montgomery Medical Center, in Jackson, Mississippi, is an adult resident, and may be served with process at his place of business within Hinds County, Mississippi.

4.   Defendant Charles Donelson, individually, and in his official capacity as Plaintiff's Supervising Police Sargent at the G.V. (Sonny) Montgomery Medical Center, in Jackson, Mississippi, is an adult resident, and may be served with process at his place of business within Hinds County, Mississippi.

5.   Defendant Does 1 through 10, are those other persons, firms, corporations, or other entities whose wrongful conduct caused or contributed to the injuries and damages to the Plaintiff, all whose true and correct names and address are unknown to the Plaintiff, but will be substituted by amendment when ascertained.

## JURISDICTION

6.   All claims occurred within the jurisdiction of this court. Jurisdiction over all parties and claims is proper pursuant to 29 U.S.C. §§ 633a(c) and 701et seq; 28 U.S.C. §§ 1331, 1334, 1346, 1361, 2401(a) and 2201; 42 U.S.C. §§ 1983, 2000e-5, and 2000e-16(c); Title VII; and 5 U.S.C. § 7703.

## FACTS

7.   Plaintiff, Alice Buckhanan, is an African-America female, over the age of 40. From 2002 she was a basic law enforcement officer (Occupational Series 0083, and Grade GS 6) at the G.V. "Sonny" Montgomery V.A. Hospital, in Jackson, Mississippi. During her tenure she received fully satisfactory reviews each year, as well as having successfully qualified in firearms during that entire period. That is until 2010, when a series of actions took place which she felt were discriminatory. As a result of discrimination, in 2010 Plaintiff filed an EEOC claim related to race and gender.

8.      In March 2011, while her EEOC claim was pending, Plaintiff suffered a compensable work related injury to her knee, also resulting in bilateral deconditioning to the other. As a result of this injury, Plaintiff was reassigned to alternate duty for approximately one year. She successfully completed all aspects of that assignment. She was not required to attend firearms training, or requalification, during this period of alternate duty.

9.      In March of 2012, Plaintiff began the process of transitioning back to a law enforcement position. In order to return to certified law enforcement duty, Plaintiff would be tested on psychological, physical, and firearms proficiency elements.

10.     On March 6, 2012, Plaintiff submitted to a psychological evaluation with Dr. Williams. However, it became immediately apparent that Dr. Williams had been given false and negative impressions of Plaintiff before ever meeting her, and that the process was unlike any evaluation she had ever participated in during her decade with the V.A. This evaluation was ended, and Plaintiff requested an independent examination. On April 25, 2012, Dr. Ena Scott performed a psychological evaluation, providing a report on April 27th, with a passing recommendation. The April 27, 2012 report also found the early impressions of Dr. Williams to be without support.

11.     It was later determined that Dr. Williams was given false information by Sgt. Charles Donelson about Plaintiff's actions with patients. Donelson falsely reported to the psychologist that another supervisor was critical of Plaintiff. That supervisor confirmed in writing that that the suggestion was false. Then, after initially denying that he provided the false information, on May 29, 2012, Donelson took responsibility for the fact that he had provided 'wrong' information.

12.     On May 8, 2012, Plaintiff took and was given a passing grade on her annual

physical, despite the fact that she had continuing pain in her injured knee, and complained of deconditioning to her opposing knee which would likely have made her return to law enforcement pre-mature.

13. On, May 17, 2012, the V.A. affirmed that Plaintiff passed the physical and psychological exams, and she was cleared by the department for firearms testing, despite the fact that Plaintiff was feeling the residual pain from the knee injury.

14. As she had been out of law enforcement on workers compensation assignment for over six months, the Plaintiff was not able to keep her firearms training current and therefore was entitled to take refresher training before being re-qualified on the firearms.

15. Although previously scheduled for a later date, on or about May 18, 2012, the V.A. suddenly, and without reasonable notice, announced firearms testing, which began immediately.

16. During a written portion of the testing, Plaintiff was falsely, publically, and without any basis, accused of cheating. Taking offense to the unfounded allegations, Plaintiff reported, to the V.A., the questionable conduct of her supervisors during the testing.

17. At the May testing, the Plaintiff was not permitted an opportunity to test according to prior practices, but was assured she would be allowed to take her test another day. She was not given another opportunity in Jackson.

18. The V.A. falsely claimed in the termination decision, and as a factual basis put forth in the V.A. evaluation, that on May 18-19, in Jackson, that they gave the Plaintiff three (3) chances to fire her weapon in an effort to qualify for the firearms aspect. This is not true. Plaintiff was only given one attempt, which is inconsistent with the standard training and testing which is given to all employees.

19.     The Plaintiff was, falsely, charged with failing the shooting test, when that test was never properly given.

20.     Command of the agency during this period was turbulent.  On May 27, 2012, Acting Chief Schumen announced that he was undertaking plans to revamp the department, and Plaintiff, who had made reasonable EEOC claims and genuine workers compensation claims, was targeted as a part of the revamping of the department.  To facilitate these plans, Chief Schumen promoted Sgt. Donelson to commander of operations.

21.     In June, Plaintiff, who was falsely identified as having failed the firearms testing, was scheduled to go to the Law Enforcement Training Center in Little Rock for additional firearms testing, although she had not been given adequate local training and testing.

22.     In order to further complicate her testing, Plaintiff was scheduled to travel and test without reasonable rest between shifts.  Plaintiff expressed concerns about this Little Rock training, including that the scheduling would have required her to arrive without adequate rest.

23.     However, the Defendants, and each of them, rejected the Plaintiff's efforts to accommodate her travel and work schedule.

24.     On June 15, Plaintiff tried to clarify her concerns with Donelson, including her fear that she was being discriminated on the basis of gender and age.  However the Defendants contrived a version of this discussion, and attempted to bring a job action against the Plaintiff.

25.     On June 20, 2012, Alice Buckhanan advised Chief Schumen that she has been threatened with loss of job and other harassment.  She was discouraged from further pursuit of these claims.

26.     The Plaintiff went to Little Rock on June 25 – 29, but was tested in a manner inconsistent with the Jackson testing. During the qualifying attempts, Plaintiff was credited with

hitting the targets 39 out of 50, on two of her attempts. A score of 40 on any one attempt would be considered a passing score. Plaintiff was not permitted to view the targets after they were scored, but did observed substantial and extended discussion between the scoring instructors regarding the number of holes counted. The targets were never made available for the Plaintiff's inspection.

27. Although she had only failed to pass the weapons test on the one occasion, in Little Rock, the Plaintiff was not permitted to participate in a plan of improvement as is required before termination. Instead, On July 11, 2012, yet another acting chief, Yolanda Motley, drafted the letter recommending termination, using information provided to her by Defendants, which was false and misleading. Acting Chief Motley never interviewed or counseled the Plaintiff regarding any of the basis for recommending removal.

28. On July 12, 2012, the Plaintiff was placed on administrative leave. The sole basis was that she had failed to qualify on two occasions with the firearms.

29. No other employee has been terminated for failing the firing test on only one occasional, but all have been reasonably given an opportunity to re-test after failing.

30. Joe Battle, the Director of the V.A. Medical Center, has acknowledged that it would be reasonable for the Plaintiff to re-test, but because she would not agree to waive her unrelated EEOC claims, she was not given an opportunity.

31. Significantly, the V.A. has admitted that others (between three and seven), have failed to pass the firearms qualifications, yet only this Plaintiff has actually been terminated on this alleged basis.

32. On or about July 16, 2012, Plaintiff was sent the letter of proposed dismissal. Plaintiff did timely contest the recommendation.

33. While waiting for final action and on paid administrative leave, Plaintiff was denied, on several occasions, her pay by Yolanda Motely, who manipulated time cards.

34. Discussions were had between the V.A. and Plaintiff regarding resolving the differences, and allowing her to retest. However, the V.A. refused to consider any resolution that did not included a formal written waiver of all unrelated pending and potential claims, including the EEOC claim that was filed.

35. Then, on October 1, 2012, the previously filed EEOC claim was denied. Two weeks later, and fully aware of the denial of the EEOC claim, the V.A., on October 15, 2012, sent the Final Termination letter, effective November 2, 2012. The letter falsely claimed basis of the termination was only that Plaintiff had failed to qualify with the firearms on two occasions.

36. The Plaintiff timely pursued and has exhausted her administrative remedies, and was given the right to proceed to the United States District Court, within 30 days of April 30, 2013. This suit is timely filed.

37. In keeping with the aggressive retaliation and discrimination, in an effort to deny Plaintiff unemployment benefits, and subsequent to her effective termination date, the Agency falsely informed the Mississippi Department of Employment Security that the Plaintiff had been terminated for misconduct. This resulted in the Plaintiff being denied benefits, forcing her to appeal the denial with the state of Mississippi Employment Security Commission.

38. The Defendants had no legitimate basis for the decision to terminate the Plaintiff, and this decision was made in retaliation for having filed and EEOC claim, and because she is a black woman over the age of forty.

39. The Defendants had no legitimate basis for the decision to terminate the Plaintiff, and this decision was also made in retaliation for having made a workers compensation claim.

## COUNT I

### (Retaliatory Termination Based on Filing EEOC claim)

40. The allegations contained within paragraphs 1-39, above, are incorporated by reference herein.

41. The Plaintiff engaged in activity protected under Title VII, and other laws, the filing of an EEOC claim, but despite this she suffered an adverse employment action which was causally linked to the protected activity.

## COUNT II

### (Retaliatory Termination Based on Filing EEOC claim)

42. The allegations contained within paragraphs 1-41, above, are incorporated by reference herein.

43. The Plaintiff engaged in activity protected under law by the filing of her worker's compensation claim, but despite this, she suffered an adverse employment action which was causally linked to the protected activity.

## COUNT III

### (Discrimination Based On Race)

44. The allegations contained within paragraphs 1-43, above, are incorporated by reference herein.

45. Plaintiff is an African American, is qualified for her position, has suffered adverse employment actions, and favorable treatment was given to persons outside of the protected class or others similarly situated were treated more favorably.

## COUNT IV

### (Discrimination Based On Gender)

46. The allegations contained within paragraphs 1-45, above, are incorporated by reference herein.

47. Plaintiff is female, is qualified for her position, has suffered adverse employment actions, and favorable treatment was given to persons outside of the protected class or others similarly situated were treated more favorably.

## COUNT V

### (Discrimination Based On Age)

48. The allegations contained within paragraphs 1-47, above, are incorporated by reference herein.

49. Plaintiff is over the age of forty years and a member of a protected class, is qualified for her position, has suffered adverse employment actions, and favorable treatment was given to persons outside of the protected class or others similarly situated were treated more favorably.

## COUNT VI

### (Breach of Employment Contract)

50. The allegations contained within paragraphs 1-49, above, are incorporated by reference herein.

51. The Plaintiff and Defendant V.A. had entered into a contractual employment relationship which entitled her to all the benefits of the contract, including the right to be free from retaliation and discrimination.

52. The Defendant V.A. terminated the Plaintiff in violation of her contractual right to be free from retaliation and discrimination.

53. As a result of the defendants breach the Plaintiff has suffered damages.

## COUNT VII

### (Breach of Conditions of Employment)

54. The allegations contained within paragraphs 1-53, above, are incorporated by reference herein.

55. The Plaintiff and Defendant V.A. had entered into a contractual employment relationship which entitled her to all the benefits of the contract, including the right to receive an employment improvement plan, to be retrained in firearms before testing, and the right to re-test after failing to qualify.

56. The Defendant V.A. terminated the Plaintiff in violation of her contractual conditions of employment.

57. As a result of the Defendant's breach the Plaintiff has suffered damages.

## COUNT VIII

### (Hostile Work Environment)

58. The allegations contained within paragraphs 1-57, above, are incorporated by reference herein.

59. Plaintiff is the member of several protected classes, the Plaintiff was subject to unwelcomed, abusive and discriminatory conduct by the Defendants, the harassment was based on her protected class, and the harassment affected a term, condition or privilege of employment. Under the totality of circumstances, the Plaintiff can show that she has been subjected to harassment.

## COUNT IX

### (Negligent and Intentional Infliction of Emotional Distress)

60. The allegations contained within paragraphs 1-59, above, are incorporated by reference herein.

61. The Defendants and each of them, through intentional or negligent conduct has caused the Plaintiff to suffer serious emotional distress and suffering.

## DAMAGES

62. The Plaintiff has suffered and will continue to suffer damages and injury as a direct and proximate result of the Defendants' actions, including but not limited to:

A. Loss of her career;

B. Back Pay;

C. Front Pay;

D. Loss of benefits;

E. Loss of retirement money;

F. Emotional Suffering;

G. Public Humiliation;

H. Loss of Reputation;

I. Attorney fees;

J. Cost; and

K. All such other relief as is just, available, or as the plaintiff may otherwise be entitled to receive.

WHEREFORE PREMISE CONSIDERED, the Plaintiff seeks to have these claims against each of the Defendants found in her favor and prays this Court:

a. She be awarded all damages, including but not limited to, lost wages and fringe benefits she has suffered as a direct and proximate result of the defendants actions;

b. Award Plaintiff damages in the amount of $500,000.00 for pain, suffering, loss of reputation, mental anguish, and emotional distress; and

c. Award Plaintiff her cost herein including reasonable attorneys' fees and other additional relief as may appear to be equitable and just.

Respectfully Submitted, this the ___ day of May, 2013.

ALICE BUCKHANAN,
PLAINTIFF

BY: _____
MICHAEL J. WOLF

OF COUNSEL:

MICHAEL J. WOLF – BAR NO. 99406
PAGE, KRUGER & HOLLAND, P.A.
P.O. Box 1163
Jackson, Mississippi 39215-1163
Telephone: (601) 420-0333
Fax: (601) 420-0033
Email: mwolf@pagekruger.com