UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

ALICE BUCKHANAN                                          PLAINTIFF

VS.                          CIVIL ACTION NO. 3:13CV278TSL-JMR

ERIC K. SHINSEKI, IN HIS OFFICIAL CAPACITY
AS SECRETARY OF THE UNITED STATES
DEPARTMENT OF VETERANS AFFAIRS;
VETERANS ADMINISTRATION MEDICAL
CENTER, JACKSON G.V. "SONNY" MONTGOMERY
MEDICAL CENTER; JOE BATTLE;
CHARLES DONELSON and DOES 1 through 10          DEFENDANTS

<u>MEMORANDUM OPINION AND ORDER</u>

     This cause is before the court on a motion to dismiss

pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of

Civil Procedure filed by defendants Erik K. Shinseki, in his

official capacity as Secretary of the United States Department of

Veterans Affairs; Veterans Administration Medical Center/Jackson

G.V. "Sonny" Montgomery Medical Center (VA Medical Center);[1] Joe

Battle, in his individual capacity and his official capacity as

Director of the VA Medical Center; and Charles Donelson, in his

individual capacity and his official capacity as supervising

police sergeant at the VA Medical Center.  Plaintiff Alice

Buckhanan has responded to the motion and the court, having

--------

     [1]     Although plaintiff has purported to sue the Veterans
Administration Medical Center and the G. V. "Sonny" Montgomery
Medical Center as separate defendants, these are the same entity.

considered the memoranda of authorities submitted by the parties, concludes the motion should be granted.

In November 2012, plaintiff Alice Buckhanan was terminated from her employment as a police officer with the Jackson VA Medical Center, for the ostensible reason that she had twice failed to pass required firearms proficiency testing.  She brought the present action, asserting causes of action for (1) retaliatory discharge for filing an EEO complaint; (2) retaliatory discharge for filing a workers' compensation action; (3) discrimination based on race; (4) discrimination based on gender; (5) discrimination based on age; (6) breach of employment contract; (7) breach of conditions of employment;  (8) hostile work environment; and (9) negligent and intentional infliction of emotional distress.  By their motion, defendants seek dismissal of all plaintiff's claims against defendants Battle and Donelson and for dismissal of her claims for hostile work environment, retaliation based on filing a workers' compensation claim, and for breach of contract, breach of conditions of employment and intentional and negligent infliction of emotional distress, against all defendants.[2]

-----

[2]    Defendants do not seek dismissal of plaintiff's Title VII or ADEA discrimination claims against Secretary Shenseki.

Facts and Procedural History

The facts, as alleged in the complaint, are as follows. Plaintiff became employed as a police officer with the VA Medical Center in 2002. In 2010, plaintiff filed an EEO claim for race and gender discrimination. Thereafter, in March 2011, she suffered a compensable work-related injury for which she was assigned to alternate duty for approximately a year. In March 2012, she began the process of transitioning back to a law enforcement position, by which she was required to undergo physical and psychological evaluations and to be tested in firearms proficiency. She passed her physical examination. She also passed her psychological evaluation, but only after she requested an independent evaluation when it became apparent to her during her initial evaluation by a Dr. Williams that someone (whom she later determined to be defendant Donelson) had given Dr. Williams false and negative information about her.

Plaintiff alleges that on May 18, 2012, immediately upon the VA's confirming that she had passed her physical and psychological evaluations, she was required to undergo firearms testing without reasonable notice and time to prepare. She claims that under applicable policy, she was entitled to take a refresher course prior to testing since she had been out of law enforcement for more than six months due to her injury, and yet she was not given this opportunity. Plaintiff asserts that during the written

3

portion of the firearms test, she was falsely and publicly accused of cheating without any basis.  She further alleges that although defendants later claimed when terminating her that she had failed three attempts at the shooting portion of the test, in fact, she was given only one attempt, rather than three, as was the standard training and testing given to all employees.

Plaintiff states that after the incomplete firearms testing in May, which was done in Jackson, she was required to travel to the Law Enforcement Training Center in Arkansas for additional firearms testing; and while she complained that her work and the travel schedule required her to arrive without adequate time for rest before commencing training and testing, and further complained that she believed she was being discriminated against because of her race and gender, no effort was made to accommodate her travel and work schedule.  During the testing in late June 2012, plaintiff was required to score a forty out of fifty on at least one of three qualifying attempts in order to achieve a passing score.  She failed to qualify, however, as her highest score was thirty-nine, which she scored on two of the three targets.  Plaintiff notes that there was extended discussion between the scoring instructors about the number of hits and complains that she was not allowed to inspect the targets herself to ascertain whether she was given the correct scores.

4

In early July, plaintiff was placed on administrative leave, followed closely by a proposal for her termination, ostensibly for having twice failed to pass the firearms proficiency testing. Plaintiff claims this was false, as she had not completed the first round of testing and thus had failed firearms testing only once. She asserts that having failed the test only once, she was entitled to be placed on a plan of improvement prior to termination, and yet this did not occur. She claims that when she challenged her proposed termination on this basis, defendants refused to allow her to retest unless she would execute a waiver of any pending and potential claims, including her then-pending EEO complaint.

On October 15, 2012, just two weeks after a ruling was issued denying her EEO complaint, plaintiff was advised by letter that on account of her failure to qualify with firearms on two occasions, she would be terminated effective November 2, 2012. Plaintiff concludes that defendants had no legitimate basis to terminate her and that the decision was made in retaliation for having filed an EEOC claim and because she is a black woman over the age of forty, and was made in retaliation for her having filed a workers' compensation claim. She alleges additionally that even after her effective termination date, defendants continued their "aggressive retaliation and discrimination" by falsely informing the Mississippi Department of Employment Security that she had been

5

terminated for misconduct.  This necessitated an appeal by plaintiff to secure unemployment compensation benefits.

Following her termination, plaintiff filed an appeal to the Merit Systems Protection Board (MSPB) alleging she was improperly terminated because of her age, race and gender and in retaliation for filing an EEO claim, and in retaliation for filing a workers' compensation claim.  The MSPB's decision, issued March 26, 2013, determined that plaintiff was not improperly removed from her position, and that her removal was not based on age, race or gender discrimination and was not in retaliation for filing an EEO complaint.  Plaintiff filed the present action on May 8, 2013, a week after the MSPB's decision became final on April 30, 2013.

<u>Plaintiff's Claims</u>

<u>Workers' Compensation Retaliation</u>

Defendants argued in their motion that plaintiff's claim that she was terminated in retaliation for filing a workers' compensation claim must be dismissed for failure to exhaust administrative remedies.  In response, plaintiff pointed out that while the ruling issued by the MSPB did not address this claim, she did properly raise the issue in the administrative proceeding, as evidenced by her prehearing submission to the MSPB in which she specifically identified the following as an issue for decision: "Was the basis for termination claimed the Agency genuine, or was it a pretext used to retaliate against the Appellant for making a

Worker's Compensation claim?"  In light of plaintiff's response, defendants concede in their reply that plaintiff raised before the MSPB the issue of her termination as retaliation for filing a workers' compensation claim.  However, they submit that although exhaustion may not be a basis for dismissal, plaintiff's cause of action for retaliatory discharge based on her workers' compensation claim must nevertheless be dismissed for another reason, namely, that plaintiff cannot proceed under Title VII or the ADEA for retaliation allegedly based on filing a workers' compensation claim since filing a workers' compensation claim is not protected activity under Title VII or the ADEA.  Indeed, it is evident that filing a workers' compensation claim is not protected activity under Title VII or the ADEA.  See Tratree v. BP North American Pipelines, Inc., 277 Fed. Appx. 390, 396 (5th Cir. 2008) (ADEA provides protection against retaliation for complaining of age discrimination); Armstrong v. K & B Louisiana Corp., 488 Fed. Appx. 779, 781 (5th Cir. 2012) (Title VII protected activities include opposing any practice deemed an unlawful employment practice under Title VII or making a charge, testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing under Title VII).  However, plaintiff does not bring this claim based on Title VII or the ADEA, but rather as

a state law claim for wrongful termination.[3]  Aside from the fact that Mississippi does not recognize retaliatory discharge for filing a workers' compensation claim, this claim is not cognizable in any event as it is preempted by the Civil Service Reform Act (CSRA), 5 U.S.C. § 1101, *et seq.*

The CSRA "provides a comprehensive framework for the judicial and administrative review of prohibited personnel actions taken against federal employees and applicants for federal employment." Crawford v. United States Dept. of Homeland Sec., 245 Fed. App'x 369, 374 (5th Cir. 2007).  The Fifth Circuit has held that in view of the remedial system set forth in the CSRA, the CSRA provides the exclusive remedy for claims against federal employers for conduct constituting "prohibited personnel practices," and "preempts *any judicial remedy* for such claims." Schwartz v. International Federation of Professional and Technical Engineers, AFL-CIO, 306 Fed. Appx. 168, 172, 2009 WL 62236, 2 (5th Cir. 2009) (emphasis added).  "In fact, a federal employee's personnel-related complaints are preempted 'even if no remedy [is] available ... under the CSRA.'" Mangano v. U.S., 529 F.3d 1243, 1246 (9th Cir. 2008) (quoting Collins v. Bender, 195 F.3d 1076, 1079 (9th

---

[3]  As the basis for this claim was not clear from the complaint, the court, by order of September 5, 2013, directed that plaintiff advise the court and defendants of the statute or law upon which she bases her cause of action for workers' compensation retaliation.  Plaintiff responded on September 10 that her claim is brought under state law for wrongful termination.

Cir. 1999)).  In <u>Schwartz</u>, the court determined that the CSRA completely preempted the plaintiff's state law intentional infliction of emotional distress claim since the challenged actions constituted a prohibited personnel practice.  The court explained:

> [T]he CSRA, which created an "elaborate new framework for evaluating adverse personnel actions against federal employees," <u>United States v. Fausto</u>, 484 U.S. 439, 443, 108 S. Ct. 668, 98 L. Ed. 2d 830 (1988) (alteration and internal quotation marks omitted), was designed to provide the exclusive remedies for conduct constituting "prohibited personnel practices" and that the CSRA therefore preempts any judicial remedies for such claims, <u>see</u>, <u>e.g.</u>, <u>id.</u> at 444, 454, 108 S. Ct. 668 (1988) (explaining that "[a] leading purpose of the CSRA was to replace the haphazard arrangements for administrative and judicial review of personnel action ... that was the civil system" and concluding that "[t]he CSRA established a comprehensive system for reviewing personnel action taken against federal employees"); <u>Montplaisir v. Leighton</u>, 875 F.2d 1, 3, 5 (1st Cir. 1989) (noting "the inescapable conclusion that Congress intended to preempt state-law tort actions" and explaining that courts have treated the CSRA as "establishing the sole mechanism for resolving labor conflicts in the federal arena").  Indeed, we have explicitly noted that "[e]very circuit facing this issue has concluded that the remedies provided by the CSRA preempt state-law remedies for adverse personnel actions." <u>Rollins v. Marsh</u>, 937 F.2d 134, 140 (5th Cir. 1991).  Thus, if [the defendants'] actions were "prohibited personnel practices," [the plaintiff's] claims based on them are completely preempted....

<u>Schwartz</u>, 306 Fed. Appx. at 172.

Just as the <u>Schwartz</u> court found the plaintiff's state law claim preempted, the court in <u>American Postal Workers Union v. United States Postal Serv.</u>, 940 F.2d 704 (D.C. Cir. 1991), held

9

that the CSRA preempted the plaintiff's tort claim under the FTCA for discharge in retaliation for filing a compensation claim under the Federal Employees' Compensation Act (FECA).  Id. at 709.  The court also held that the FECA does not "afford[] a cause of action [in federal district court] to an employee who claims he was discharged in retaliation for filing a FECA claim."  Id. See also Bachman v. Donahoe, No. 3-11-CV-1864-M-BD, 2011 WL 4084784, 3 (N.D. Tex. Aug. 24, 2011) ("Plaintiff's claim that he was terminated in retaliation for filing a workers' compensation claim falls within the scope of the CSRA and is preempted by statute."); Brown v. Potter, Civ. Action No. 06-695, 2009 WL 3297295, 4 (E.D. Pa. Oct. 9, 2009) (quoting Am. Postal Workers Union).

As plaintiff's claim for retaliatory termination obviously stems from her employment with the VA and is based on personnel actions involving her termination from employment, the claim is preempted by the CSRA and as such will be dismissed pursuant to Rules 12(b)(1) and/or 12(b)(6).[4]

State Law Claims

Defendants submit that plaintiff's claims for breach of employment contract, breach of conditions of employment and

---

[4]   Just as plaintiff's retaliatory termination based on her workers' compensation claim would be CSRA-preempted, her separate state law claims would also be preempted by CSRA to the extent such claims may be based on her allegation that she was fired in retaliation for filing a workers' compensation claim.

negligent and intentional infliction of emotional distress must be dismissed for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted because they are preempted by Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.,* and the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq*.  Defendants are correct that Title VII provides the exclusive remedy for employment discrimination claims raised by federal employees.  <u>Jackson v. Widnall</u>, 99 F.3d 710, 716 (5th Cir. 1996) (citing <u>Brown v. Gen. Servs. Admin.</u>, 425 U.S. 820, 835, 96 S. Ct. 1961, 48 L. Ed. 2d 402 (1976)); <u>see also</u> <u>Hampton v. Internal Revenue Serv.</u>, 913 F.2d 180, 182-83 (5th Cir. 1990) (holding federal employee's state tort claim preempted by Title VII); <u>Ford v. Donley</u>, 485 Fed. Appx. 305, 307 (10th Cir. 2012) (holding that Title VII is federal employees' exclusive remedy for race discrimination and retaliation).  Likewise, the ADEA provides the exclusive remedy for age discrimination claims by federal employees.  <u>See</u> <u>Paterson v. Weinberger</u>, 644 F.2d 521, 535 (5th Cir. 1981) (holding that "by establishing the ADEA's comprehensive scheme for the resolution of employee complaints of age discrimination in federal employment, Congress clearly intended that all such claims of age discrimination be limited to the rights and procedures authorized by the Act").  Thus, "when a complainant against a federal employer relies on the same facts to establish a Title VII claim [or an ADEA claim] and a non-Title VII

11

claim [or non-ADEA claim], the non-Title VII claim [or non-ADEA claim] is 'not sufficiently distinct to avoid' preemption" by Title VII or the ADEA.  Pfau v. Reed, 125 F.3d 927, 932 (5th Cir. 1997)(quoting Rowe v. Sullivan, 967 F.2d 186, 189 (5th Cir. 1992)), vacated and remanded on other grounds, 525 U.S. 801, 119 S. Ct. 32, 142 L. Ed. 2d 24 (1998), pertinent holding reinstated, 167 F.3d 228, 229 (5th Cir. 1999); see also Gurchensky v. Potter, Civil Action No. 06-5760 (JLL), 2010 WL 2292171, 6 (D.N.J. May 28, 2010) (stating that "when a federal employee brings an action alleging violations of both federal antidiscrimination statutes and state law based on the same set of facts, courts have found that the state law claims are preempted") (citations omitted).

In response to defendants' motion, plaintiff argues that defendants' "unsupported presumption" and "speculation" that the factual allegations for all her claims are identical "is improper as Plaintiff has clearly articulated claims not only under Title VII and ADEA but also 42 U.S.C. § 1983."  She further declares that "[w]hile it is true that ultimately some of the legal theories claims [sic] may become redundant, based on the facts attributable to each issue, until there is sufficient discovery to differentiate between these factual distinctions then it is improper to dismiss any of the claims at this time."  In other words, plaintiff takes the position that she has asserted a claim under § 1983 that discovery may show to be separate and distinct

12

from her Title VII claims, which therefore is not preempted, and which in turn does not preempt her state law claims.  Plaintiff's position fails for several reasons.

First, this action could not be brought pursuant to 42 U.S.C. § 1983 because there is no state action; the defendants are a federal agency and federal employees.  <u>See</u> <u>Edwards v. Municipal</u>, 254 F.3d 70 (5th Cir. 2001).  "<u>Bivens</u>[5] is the federal counterpart of § 1983 [and] ... extends the protections afforded by § 1983 to parties injured by federal actors not liable under § 1983."  <u>Abate v. Southern Pac. Transp. Co.</u>, 993 F.2d 107, 110 n.14 (5th Cir. 1993).  However, plaintiff cannot state a claim against the VA Medical Center or Secretary Shinseki under <u>Bivens</u> since <u>Bivens</u> actions are unavailable against federal agencies.  <u>See</u> <u>Gibson v. Veteran's Admin.</u>, 84 Fed. Appx. 363, 364, 2003 WL 22849810, 1 (5th Cir. 2003) (finding that district court did not have jurisdiction over claim that VA violated his constitutional rights because "actions pursuant to <u>Bivens</u> may not be maintained against a federal agency") (citing <u>FDIC v. Meyer</u>, 510 U.S. 471, 486, 114 S. Ct. 996, 127 L. Ed. 2d 308 (1994)).  And the Fifth Circuit has held that there is no federal jurisdiction to address a <u>Bivens</u> claim by a federal employee asserting a claim of employment discrimination since "Title VII provides both the exclusive cause

---

[5]     <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971).

of action and the exclusive remedy for federal employees who wish to assert claims of employment discrimination." Perez v. Federal Bureau of Investigation, 71 F.3d 513, 515 (5th Cir. 1995) (affirming dismissal of Bivens claim based on alleged employment discrimination as preempted by Title VII).  Thus, plaintiff has no cognizable Bivens claim against Battle and Donelson in their individual capacities, notwithstanding that such claims would not be cognizable under Title VII or the ADEA.  See Pfau, 125 F.3d at 934 (holding that "Title VII's preemptive effect as to claims against individual supervisors is coextensive with its preemptive effect as to claims against federal agencies"); Smith v. Amedisys Inc., 298 F.3d 434, 448 (5th Cir. 2002)(holding that "there is no individual liability for employees under Title VII"); Stults v. Conoco, Inc., 76 F.3d 651, 655 (5th Cir. 1996) (holding that ADEA provides no basis for individual liability for supervisory employees); see also Mathis v. Henderson, 243 F.3d 446, 449 (8th Cir. 2001) (holding that since Title VII provides exclusive judicial remedy for claims of discrimination in federal employment, FTCA claims against the plaintiff's supervisor at Postal Service for acts within scope of supervisor's employment could not be maintained because they were preempted by the plaintiff's Title VII claims against the Postal Service).  From the foregoing, it follows that plaintiff's state law claims are

not saved from Title VII/ADEA preemption by any putative <u>Bivens</u> claim.

    As to whether plaintiff's state law claims are based on the same set of facts as her race, gender and age discrimination claims, the court rejects plaintiff's contention that dismissal of her state law claims would be improper "until there is sufficient discovery to differentiate" any factual allegations that may be separate and distinct from her Title VII and ADEA claims. Defendants have asserted Title VII preemption as a Rule 12(b)(1) challenge to this court's subject matter jurisdiction over plaintiff's state law claims. <u>See</u> <u>Smith v. Harvey</u>, 265 Fed. Appx. 197, 200 (5th Cir. 2008) (affirming district court's dismissal of federal employee's state tort claims for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) on basis that such claims were preempted by Title VII); <u>see</u> <u>also</u> <u>Stamper v. Shinseki</u>, Civ. Action No. 3:11cv546-DPJ-FKB, 2012 WL 5286953, 7 (S.D. Miss. Oct. 24, 2012) (observing that "Title VII preemption is a matter of subject-matter jurisdiction) (citing <u>Smith</u>).  "[A]t the Rule 12(b)(1) stage of the proceedings, the [plaintiff's] burden is to allege a plausible set of facts establishing jurisdiction[,]" and thus must establish that a basis for subject-matter jurisdiction exists. <u>Physician Hosps. of America v. Sebelius</u>, 691 F.3d 649, 652-653 (5th Cir. 2012) (citing <u>Davis v. United States</u>, 597 F.3d 646, 649-50 (5th Cir. 2009)); <u>see</u> <u>also</u> <u>Arena v. Graybar Elec. Co.</u>,

15

669 F.3d 214, 223 (5th Cir. 2012) (observing that "a factual attack under Rule 12(b)(1) may occur at any stage of the proceedings, and plaintiff bears the burden of proof that jurisdiction does in fact exist") (quoting Menchaca v. Chrysler Credit Corp., 613 F.2d 507, 511 (5th Cir. 1980)).  From its review of the complaint in this cause, it certainly appears that plaintiff's Title VII and ADEA claims and her state law claims are based are the very same facts.  Indeed, it is clear that all her factual allegations relate to the alleged race, sex and age discrimination and retaliation that form the basis of her Title VII and ADEA claims.  See Stamper, 2012 WL 5286953, at 7 (determining that the plaintiff's non-Title VII claims were insufficiently distinct from her Title VII claims to avoid preemption as his factual allegations "all relate to the alleged employment discrimination and retaliation that form the basis of his Title VII claims").  "This would include the post-employment conduct alleged" in the complaint.  Id. (citing Robinson v. Shell Oil Co., 519 U.S. 337, 339 (1997), which held that Title VII extended to a terminated employee's retaliation suit for giving unfavorable reference following termination); see also Baqir v. Principi, 288 F. Supp. 2d 706, 708-709 (W.D.N.C. 2003) (finding that plaintiff's allegation that defendant blacklisted him following his termination and thereby prevented him from obtaining employment with other prospective employers relied on same conduct

16

that formed basis for his Title VII retaliation claim and was therefore preempted by Title VII).  The court thus concludes that it lacks jurisdiction over plaintiff's state law claims against all the defendants.  See Pfau, 125 F.3d at 932 (dismissing § 1981 and intentional infliction of emotional distress claims as preempted by Title VII).

Title VII: Hostile Work Environment

Defendants acknowledge that plaintiff's ADEA claim and her claims for race and gender discrimination and retaliation against the VA Medical Center and Secretary Shinseki in his official capacity are properly before this court, but they contend that her Title VII claim for hostile work environment is barred for failure to exhaust administrative remedies since she did not raise such claim in her MSPB action.  See Taylor v. Books A Million, Inc., 296 F.3d 376, 379 (5th Cir. 2002) ("Employment discrimination plaintiffs must exhaust administrative remedies before pursuing claims in federal court.").  In response, plaintiff argues that she "specifically addressed" a hostile work environment in the underlying MSPB action, as she set forth in her submission to the MSPB all of the following:

> the unfounded accusations made against her for cheating, false and negative impressions of her by a VA psychologist, false impressions given on her by Sgt. Charles Donalson, the fact that the VA falsely reported that she was given three chances to qualify in May 2012 when she was only given one chance, the threats of loss

17

of her job, the denial of benefits, and ultimately her
termination.

Plaintiff does not contend that she characterized these facts as
creating a hostile work environment; rather she argues that based
on the facts she asserted in the administrative proceeding,
"[d]efendants were properly on notice that the conduct alleged
amounted to a hostile environment."  The Fifth Circuit has held
that "[w]hen a claim was not formally raised in the administrative
proceedings, the exhaustion requirement may still be satisfied as
long as an administrative investigation of the claim not raised
could 'reasonably be expected to grow out of' the charges actually
raised."  Hill v. Dep't of Veterans Affairs, No. 08-60532, 2009 WL
348767, 3 (5th Cir. Feb. 12, 2009) (citing Pacheco v. Mineta, 448
F.3d 783, 789 (5th Cir. 2006); Pacheco, 448 F.3d at 788-89
(finding that the scope of an EEOC charge is the charge itself and
the investigation which can "reasonably be expected to grow out of
the charge) (citation omitted)).  The question is whether
plaintiff's submission to the MSPB setting forth her complaint
"reasonably encompasses [a] claim of a hostile work environment."
Turner v. Novartis Pharmaceuticals Corp., 442 Fed. Appx. 139, 141
(5th Cir. 2011).  In the court's opinion, it does not.

To prevail on a claim for hostile work environment, the
harassment must have "affected a 'term, condition or privilege' of
his employment (i.e., the harassment was so pervasive or severe as

18

to alter his conditions of employment and create an abusive working environment)." Hiner v. McHugh, – Fed. Appx. ––, 2013 WL 4034421, 5 (5ᵗʰ Cir. 2013). "Whether an environment is hostile or abusive depends on the totality of the circumstances, including the frequency and severity of the discriminatory conduct; whether it is physically threatening or humiliating, or 'a mere offensive utterance'; and whether it unreasonably interferes with an employee's ability to perform his job." Id. (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)). The facts set forth in plaintiff's submission to the MSPB would not have reasonably caused defendants or the MSPB to consider that a potential hostile work environment claim was at issue. That is, it would not have been apparent that she was asserting that she had been subjected to a hostile work environment. Accordingly, the court concludes that she failed to exhaust her administrative remedies as to this claim and it will therefore be dismissed. See Walton–Lentz v. Innophos, Inc., 476 Fed. Appx. 566, 570 (5ᵗʰ Cir. 2012) (affirming district court's conclusion that the plaintiff's "failure to mention these particular [hostile-work-environment] claims [in her EEOC charges] ... is not in the nature of a technical charge deformity, but more in the nature of a failure to allege facts that require no artful drafting or specialized skill").[6]

---

[6]     The Fifth Circuit has explained that the rule that the exhaustion requirement may be satisfied as long as an administrative investigation of the claim not raised could

Title VII

Defendants seek dismissal of plaintiff's Title VII and ADEA claims, to the extent such claims may be asserted against Battle and Donelson, since the only proper defendant as to these claims is the secretary of the agency for which the plaintiff was employed.  See Menchaca v. Frank, No. 92-5613, 1993 WL 185783, 1 (5th Cir.  May 25, 1993) (finding that the plaintiff failed to state claim against individual defendants under Title VII since "[t]he proper defendant in a Title VII ... claim is the head of the employing agency....").  The individual defendants are thus not proper parties as to these claims and will therefore be dismissed.

Conclusion

Based on all of the foregoing, it is ordered that defendants' motion to dismiss is granted, and thus, with the exception of her

---

reasonably be expected to grow out of the charges actually raised "serves 'to trigger the investigatory and conciliatory procedures of the EEOC' without keeping unsophisticated complainants out of court on technicalities." Walton-Lentz v. Innophos, Inc., 476 Fed. Appx. 566, 569 (5th Cir. 2012) (quoting Pacheco v. Mineta, 448 F.3d 783, 789 (5th Cir. 2006)).  However, as defendants note, unlike most EEOC complainants, whose charges are filed *pro se*, this plaintiff was represented by counsel during the MSPB proceeding, which further supports the court's conclusion.  See Walton-Lentz v. Innophos, Inc., 476 Fed. Appx. 566, 570 (5th Cir. 2012) (holding that the plaintiff's "being represented by counsel in filing her EEOC charges further supports the district court's ruling" that her failure to mention a hostile work environment claim in the administrative remedy was not a mere technical deficiency and constituted a failure to exhaust).

claims for discrimination under Title VII and the ADEA against Secretary Shinseki, are dismissed.

SO ORDERED this 3rd day of October, 2013.

/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE